No. 03-060

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 333

ELIZABETH HUBNER,

                Plaintiff and Respondent,

        v.

CUTTHROAT COMMUNICATIONS, INC.,

                Defendant and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                In and for the County of Gallatin, Cause No. DV 2002-71,
                The Honorable Mark L. Guenther, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Robert L. Sterup, Holland & Hart, LLP, Billings, Montana

        For Respondent:

                Daniel P. Buckley, Berg, Lilly & Tollefsen, P.C., Bozeman, Montana

                                Submitted on Briefs:  July 30, 2003

                                        Decided:  December 4, 2003

Filed:

        _____
                            Clerk

Justice John Warner delivered the Opinion of the Court.

¶1     Cutthroat Communications (Cutthroat) appeals an order of the Eighteenth Judicial District Court, Gallatin County, denying its motion to compel arbitration of Elizabeth Hubner's (Hubner) wrongful discharge from employment claim. We affirm.

¶2     We address the following issue on appeal: Did the District Court err in concluding Hubner did not agree to binding arbitration by signing the acknowledgment in her employee handbook?

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     In late 2000, Hubner was hired to work for Cutthroat as the controller in charge of accounting. She started working on January 2, 2001. On January 19, 2001, she signed an acknowledgment in Cutthroat's employee handbook. This handbook included the arbitration provision at issue here. About one year later, Hubner's employment was terminated. Soon after, Hubner brought a claim for wrongful discharge from employment. Pursuant to § 27-5-115, MCA, Cutthroat moved for a summary disposition compelling Hubner to arbitrate. In response, Hubner asserted that there was no agreement to arbitrate. After conducting a hearing and considering the evidence in accordance with the procedure outlined in § 27-5-115, MCA, the District Court agreed with Hubner and denied Cutthroat's motion. Cutthroat now appeals. Further factual details are discussed below.

## STANDARD OF REVIEW

¶4     We review a district court's conclusions of law regarding arbitrability like any other issue of contract interpretation; we determine whether the court is correct. *Ratchye v. Lucas*,

2

1998 MT 87, ¶ 14, 288 Mont. 345, ¶ 14, 957 P.2d 1128, ¶ 14.

DISCUSSION

¶5 Did the District Court err in concluding Hubner did not agree to binding arbitration by signing the acknowledgment in her employee handbook?

¶6 In order to address the issue presented, we first set out Cutthroat's employee handbook provisions that give rise to this appeal. First, along the top on the cover page, the employee handbook reads:

> **NOTICE: THIS EMPLOYEE HANDBOOK CONTAINS A REQUIREMENT THAT ANY CONTROVERSIES ARISING OUT OF OR IN ANY WAY RELATING TO YOUR EMPLOYMENT WITH CUTTHROAT COMMUNITCATIONS [sic], INC. ARE SUBJECT TO BINDING ARBITRATION**

On page one of the twelve page handbook, there is an introduction which reads:

> **INTRODUCTION**
>
> Employees will be given an Employee Handbook at the time of employment. The Handbook is not intended to address every conceivable policy or situation. It is not a contract of employment. The Handbook includes summaries of key policies, procedures, and standards governing employment at Cutthroat Communications, Inc. ("Employer"). Employees are asked to read it carefully and acknowledge in writing that it has been received and is understood.

On the last page of the handbook, the policies from the previous page regarding Job Restoration continue. Then there is a statement that reads:

> NOTICE: THIS CONTRACT AND ANY CONTROVERSIES ARISING OUT OF OR IN ANY WAY RELATING TO YOUR EMPLOYMENT WITH EMPLOYER ARE SUBJECT TO BINDING ARBITRATION.

This statement is immediately followed by four paragraphs which read:

3

**ARBITRATION**

Any controversy between the Employee and the Employer, its employees or agents arising out of or in any way relating to Employee's employment or the termination of that employment with Employer for any reason whatsoever shall be determined by arbitration in accordance with the Rules of Procedures [sic] of the American Arbitration Association. The enforceability of the Arbitration Provision in this Agreement shall be determined by Federal, not state, law in accordance which [sic] the Federal Arbitration Act, 9 U.S.C. § 1 et seq.

**CHANGES IN POLICY**

This Manual has been prepared to provide you with a better understanding of your job with Employer. It contains information about things you can expect from the company, and in turn, what the company expects of you. However, the procedures and plans contained in the booklet and in other statements that may be issued from time to time, are not a contract of any kind. Although Employer expects to continue these procedures and plans, the right is necessarily reserved to make changes, additions or terminations at its sole discretion.

**ACKNOWLEDGMENT FOR RECEIPT OF EMPLOYEE HANDBOOK**

I, [Elizabeth Hubner is hand printed on the blank line] hereby acknowledge that on this date I have received and read the Employee Handbook provided by Employer.

I understand that I am required to abide by all the conditions and requirements of the Employee Handbook, and further acknowledge that the Employee Handbook shall not constitute a contract of employment between the Employer and myself. The Employee Handbook shall not be construed as creating any relationship other than employment-at-will relationship.

Below this statement is a signature line for the "Employee Signature" which Hubner signed and dated January 19, 2001.

¶7    Before turning to the District Court's holding, we note that Hubner and Stanley McHann, Jr., Vice President of Cutthroat, also signed a letter on December 22, 2000, setting

4

out the future terms of Hubner's employment. The letter stated that Hubner would be "asked to sign an employee acknowledgment form." However, we need not address this letter because Cutthroat does not assert Hubner is bound to arbitration by virtue of the letter. Rather, Cutthroat relies on Hubner's signature in the handbook. Further, we also need not address the letter because it states it "is not an employment contract." In addition, the parties dispute Hubner's relative expertise regarding employee handbooks and the extent of her participation and opportunity to comment during the preparation and presentation of the handbook to the employees. However, none of these disputed issues of fact are relevant to our inquiry. Our decision is based on the plain language of the handbook itself, as was the District Court's decision.

¶8 Based on the above handbook provisions, the District Court first determined that the handbook contained an ambiguity because it both disclaimed itself as a contract in a number of places including the acknowledgment and referred to itself as "this contract" just before the arbitration provision. The court then followed the rule that ambiguities are to be construed against the drafter and concluded that no contract to arbitrate existed between Hubner and Cutthroat by virtue of the handbook arbitration provision and Hubner's signed acknowledgment of the handbook. The court held that the arbitration provision merely informed Hubner that Cutthroat had a policy of binding arbitration.

¶9 Finally, the District Court concluded that the arbitration section of the handbook could not serve as a separate independent contract. In making this conclusion, the court distinguished the terms at issue here from those at issue in *Patterson v. Tenet Healthcare* (8th

5

Cir. 1997), 113 F.3d 832.  The District Court stated:

> First, the acknowledgment form [in *Patterson*] was set forth on a separate page of the handbook and introduced by the heading, "**IMPORTANT!** *Acknowledgment Form*."  Id.  Second, the page was removed from the handbook after the employee signed it and was stored in a file.  Third, there was a marked transition in language and tone from the paragraph preceding the arbitration clause to the arbitration clause itself.  The court found that although the preceding paragraph discussed the company's reservation of its "right to amend, supplement, or rescind" any handbook provisions, the arbitration clause used contractual terms such as "I understand," "I agree," I "agree to abide by and accept," "condition of employment," "final decision," and "ultimate resolution." Id.
>
> In this case Cutthroat's arbitration agreement is not severable from the employee handbook.  The clause was not written in a different voice.  The clause was not on a page separate from the rest of the employment handbook.  The clause was not torn out of the handbook and placed in a file.  In fact, there is nothing to indicate that Cutthroat's arbitration clause was meant to be separate from the handbook.  Since the arbitration clause was part of Cutthroat's employee handbook, it is not a binding written agreement.

Given the conclusion that the arbitration provision did not constitute a separate contract, the District Court denied Cutthroat's motion.

¶10    Cutthroat asserts the District Court erred because Hubner agreed to abide by the handbook and therefore, she agreed to the arbitration provision.  In addition, Cutthroat asserts that under *Prima Paint Corp. v. Flood & Conklin Mfg. Co.* (1967), 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270, the arbitration clause is separable from the handbook.  Cutthroat further argues that the plain language of the clause before the arbitration provision gave notice of the contractual nature of the arbitration provision by using the language "this contract."  Finally, Cutthroat argues that because the arbitration clause was separable, it was independently enforceable.  Throughout its entire argument, Cutthroat calls this Court's

6

attention to the federal and state policies favoring arbitration by requiring doubts to be resolved in favor of arbitration. Cutthroat further asserts federal law is binding on our decision.

¶11 In contrast, Hubner argues, *inter alia*, that the District Court was correct in concluding she did not consent to binding arbitration by virtue of the handbook provisions. Hubner also argues state law applies to the question of whether she agreed to arbitrate disputes with Cutthroat.

¶12 We agree with the District Court that no contract to arbitrate was formed by virtue of the handbook and Hubner's acknowledgment, even when the language of the arbitration provision is considered separately from the rest of the handbook.

¶13 An agreement to arbitrate is analyzed under the Federal Arbitration Act (FAA) if it involves interstate commerce. There is no dispute between the parties that their employment relationship was tied to interstate commerce and falls under the FAA.

¶14 Analysis under the FAA involves four steps: 1) did the parties agree to arbitrate their disputes; 2) are the disputes within the scope of the arbitration agreement; 3) did Congress intend any of the federal statutory claims asserted to be nonarbitrable; and 4) if only some of the claims are arbitrable, should the court stay the balance of the proceedings. *Genesco, Inc. v. T. Kakiuchi & Co.* (2d Cir. 1987), 815 F.2d 840, 844. We first address whether the parties agreed to arbitrate, the determinative issue in this case.

¶15 The parties disagree as to whether federal or state law applies to the question of whether they agreed to arbitrate. Cutthroat asserts that as a matter of federal law under

7

*Prima Paint*, arbitration clauses are separable from the contracts in which they are contained. As a result, Cutthroat asserts there is a separate contract to arbitrate because Hubner signed the handbook, and because under the FAA, doubts are to be resolved in favor of arbitration.

¶16    We disagree.  In *Prima Paint*, the question presented by a split in the circuit courts was whether state or federal law determined if a contract defense to an entire contract also defeated an arbitration clause.  The Court resolved the division between the circuits by holding that federal law controlled because the FAA statutes explicitly provided the answer. The Court stated that federal law required the arbitration clause to be separable and enforceable unless "the making of the agreement for arbitration . . . is . . . in issue." *Prima Paint*, 388 U.S. at 403, 87 S.Ct. at 1806.  Therefore, a state contract law defense that goes to the entire contract, and not the arbitration clause specifically, does not defeat a motion to compel arbitration.

¶17    In contrast, when a defense is aimed directly at the arbitration provision rather than the entire contract, it is well settled that state law contract defenses may be applied to hold that no enforceable agreement to arbitrate was made.  *Patterson*, 113 F.3d at 834 (ordinary principles of contract law govern whether the parties agreed to arbitrate; principles are derived from the applicable state law).  The application of state law arises under Section 2 of the FAA which provides that agreements to arbitrate shall be valid "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *Rush v. Oppenheimer & Co.* (S.D.N.Y. 1988), 681 F. Supp. 1045, 1047 n.3 (it is "well-settled that issues relating to the 'making of an agreement to arbitrate' are resolved according to state

contract law"). The rationale for this approach comes from the fact that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Ratchye*, ¶ 14 (citations omitted). Therefore, to determine whether federal or state law applies, a court first must decide whether a defense is aimed at the contract as a whole or at the arbitration provision specifically.

¶18 Hubner asserts she did not consent to arbitration because of the unclear language in her acknowledgment. Cutthroat argues Hubner's signature, together with the arbitration provision, constitutes an agreement for binding arbitration when considered separately from the entire handbook. The parties agree that the handbook itself does not constitute a contract. *See Kittelson v. Archie Cochrane Motors* (1991), 248 Mont. 512, 518, 813 P.2d 424, 427 (under Montana law, employee handbooks are generally not considered contracts). Therefore, the making of the agreement to arbitrate itself is put at issue by both Hubner's defense and Cutthroat's response. Accordingly, we agree with Hubner that state law applies to the analysis of her defense to mandatory arbitration.

¶19 Even though state law controls this case, our approach here is in line with federal cases that examine the enforceability of arbitration provisions in employee handbooks. *See, e.g., Patterson*, 113 F.3d at 834 (Missouri contract law controlled). We do not agree with Cutthroat that the arbitration and acknowledgment constitute a contract as a matter of federal law when considered separately from the handbook because if such were the case, Hubner would never be able to dispute the meaning given to her signature by the plain language of the acknowledgment she signed, no matter how poorly it was drafted. Finally, our holding

is in accord with *Prima Paint*. Here, the issue is whether any arbitration contract exists at all by virtue of particular language in a larger document that is not a contract. In *Prima Paint* contract formation language was never discussed because the issue was whether the arbitration clause was also invalid if the entire contract was invalid due to fraud in inducement. *Prima Paint*, 388 U.S. at 402, 87 S.Ct. at 1805.

¶20 We must now determine whether the District Court properly concluded the parties did not agree to arbitrate their disputes, the first step analyzed under the FAA. Cutthroat asserts Hubner's signature amounts to conclusive evidence of her agreement to arbitrate when the arbitration clause is considered separately from the entire handbook. Hubner asserts her signature to the acknowledgment does not constitute consent to arbitration. In distinguishing *Patterson*, the District Court concluded that the arbitration provision did not constitute a contract to arbitrate because the making of a contract was not clear as it was in *Patterson*. We agree with the District Court.

¶21 Acceptance or consent by the party against whom the contract is sought to be enforced is required before a contract is enforceable. Section 28-2-102(2), MCA. In this case, the clause previous to the arbitration provision refers to itself as "this contract." At the same time, the phrase describing the nature of Hubner's acknowledgment signature disclaims the formation of any contract. Even considered apart from the rest of the handbook, this language creates an ambiguity which is to be construed against the drafter. *Kingston v. Ameritrade, Inc.*, 2000 MT 269, ¶ 20, 302 Mont. 90, ¶ 20, 12 P.3d 929, ¶ 20. As Hubner asserts, this ambiguity prevented her from knowing she was agreeing to binding arbitration

10

by signing the handbook. Therefore, as the District Court held, no contract to arbitrate was formed and Hubner is not compelled to arbitrate.

¶22 Our review of other federal and state cases involving employee handbooks supports our conclusion. In the great majority of cases, the employee signed a handbook that unambiguously included a contract to arbitrate, even though the rest of the handbook was not a contract. For example, in *Patterson*, the employee signed a handbook acknowledgment form that read in part:

> I understand AMI makes available arbitration for resolution of grievances. I also understand that as a condition of employment and continued employment, I agree to submit any complaints to the published process and agree to abide by and accept the final decision of the arbitration panel as ultimate resolution of my complaint(s) for any and all events that arise out of employment or termination of employment.

*Patterson*, 113 F.3d at 834-35. As the District Court held, the above language is distinguishable from Cutthroat's handbook because the agreement to submit to binding arbitration is part of the acknowledgment the employee signs. Further, from the language "I agree to submit," it is clear the employee is entering a contract to arbitrate by signing the acknowledgment form. In addition, in that case, the acknowledgment was set out on a separate removable page rather than being included with the other handbook provisions.

¶23 Unlike this case, the other employee handbook cases cited by Cutthroat also contain unambiguous language of consent to binding arbitration. In *Arakawa v. Japan Network Group* (S.D.N.Y. 1999), 56 F.Supp.2d 349, 351, the employee signed a handbook acknowledgment which read: "I understand and agree that any controversy, dispute or claim

11

arising out of or relating to the Handbook, Acknowledgment, my employment, or the voluntary or involuntary termination of my employment with JNG shall be settled solely by final and binding arbitration in accordance with the provisions of this Handbook instead of in a court of law."  Unlike Cutthroat's language, this language made clear to the signing employee what they were agreeing to by signing the handbook.  In *Towles v. United HealthCare Corp.* (S.C. Ct. App. 1999), 524 S.E.2d 839, 842, the employee signed a handbook which read: "the provisions in this Handbook are guidelines and, except for the provisions of the Employment Arbitration Policy, do not establish a contract or any particular terms or condition of employment between myself and [United]." *See also MicroStrategy, Inc. v. Lauricia* (4th Cir. 2001), 268 F.3d 244, 248 (employee signed an "Employee Acknowledgment Form and Agreement to Arbitrate"); *Wilkerson v. Service Corp. Intern.* (S.D. Ind. 2003), 2003 WL 21052128, 2 (employee signed a handbook which read: "By signing this agreement, you are agreeing to have any and all disputes between you and your company . . . decided by binding arbitration and you are waiving your right to a jury or court trial."); *McClendon v. Sherwin Williams, Inc.* (E.D. Ark. 1999), 70 F.Supp.2d 940, 942 (handbook language should be sufficiently definite to constitute an offer).  The arbitration agreements in each of these cases are of no help to Cutthroat because, unlike the language at issue here, each contains unambiguous language that clearly indicated the employee was agreeing to binding arbitration.

¶24    Therefore, despite Cutthroat's argument that the District Court improperly considered the entire handbook in its deliberations or its argument that the arbitration provision is

12

separable from the handbook, we hold that the District Court properly concluded the parties did not make an agreement to arbitrate because Hubner did not consent to arbitrate by virtue of the ambiguous language.

¶25    Given our resolution, we need not consider Hubner's other arguments that there was no consideration to arbitrate, that Cutthroat's offer was illusory, or that the arbitration provision was unconscionable.

## CONCLUSION

¶26    Because the District Court correctly determined that the arbitration provision of the employee handbook did not constitute a binding agreement to arbitrate between Cutthroat and Hubner, we affirm the order of the District Court and remand for further proceedings.

/S/ JOHN WARNER

We Concur:

/S/ KARLA M. GRAY
/S/ JIM REGNIER
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER