[No. B234988. Second Dist., Div. Five. July 30, 2012.]

PERRY SPARKS, Plaintiff and Respondent, v.
VISTA DEL MAR CHILD AND FAMILY SERVICES, Defendant and
Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of Discussion, part B.

Counsel

Hill, Farrer & Burrill, James A. Bowles and E. Sean McLoughlin for Defendant and Appellant.

Karl Gerber for Plaintiff and Respondent.

Opinion

MOSK, J.—

## INTRODUCTION

Defendant Vista Del Mar Child and Family Services (defendant) appeals from an order denying its petition to compel arbitration of the wrongful termination claims of its former employee, plaintiff Perry Sparks (plaintiff). Defendant relies upon an arbitration clause in its 2006 employee handbook (Handbook), which plaintiff acknowledged he received. We hold that plaintiff is not bound by the arbitration clause because that clause was included within a lengthy employee handbook; the arbitration clause was not called to the attention of plaintiff, and he did not specifically acknowledge or agree to arbitration; the Handbook stated that it was not intended to create a contract; the Handbook provided that it could be amended unilaterally by defendant and thus rendered any agreement illusory; the specific rules referred to in the arbitration clause were not provided to plaintiff; and the arbitration clause is unconscionable.

## PROCEDURAL HISTORY

### A. *The Complaint*

Plaintiff filed a wrongful termination complaint against defendant, his former employer. Plaintiff alleged he was initially hired as a temporary employee in January 2007, he was permanently hired in April 2007 as a controller, and he was terminated for pretextual reasons in 2010. According to plaintiff, he was terminated after he complained of various employee practices that he asserted violated federal and state reporting and compensation laws. Plaintiff sought damages for termination in violation of fundamental public policy; unfair business practices—Business and Professions Code section 17200; violation of Labor Code section 1102.5, subdivision (a); and intentional infliction of emotional distress.

Defendant filed a petition to compel arbitration and stay the action, and moved for a hearing. In the unverified petition to compel arbitration, defendant alleged that plaintiff and all of defendant's employees were subject to a mutual dispute resolution policy that required binding arbitration of employment disputes. Defendant further alleged that it demanded arbitration of the claims asserted in the complaint and that plaintiff refused to respond or submit to arbitration. According to defendant, the arbitration policy was "prominently" located in the Handbook that was distributed to all employees. Defendant stated, "Plaintiff acknowledged receipt and review of the Handbook, and expressly agreed to abide by its terms by signing the 'Acknowledgment of Receipt of Employee Handbook' . . . on April 24, 2007."

Paragraphs KK and LL on pages 35 and 36 of the Handbook contain the following clauses, which are in the same type and size as all other provisions in the Handbook:

"KK. DISPUTE RESOLUTION POLICY

"All disputes regarding your employment with [defendant], or the termination of your employment, will be subject to final and binding arbitration pursuant to the provisions of the Federal Arbitration Act. The arbitration will be held under the applicable rules of the American Arbitration Association. [¶] This policy requires that arbitration shall be the exclusive forum for resolving all disputes between you and [defendant] or any of its employees or managers arising out of claims for wrongful termination, discrimination, retaliation or harassment in violation of state or federal law, alleged violation of state or federal family and medical leave laws and any other laws pertaining to employment, and for unpaid wages under state or federal law. All such claims, as well as any other claims that arise out of your employment relationship with [defendant], shall be resolved by an arbitrator and not

by judge or jury. [¶] The sole exceptions to arbitration are claims for workers' compensation or unemployment insurance benefits. This policy also requires [defendant] to arbitrate any and all claims it may have against you which arise out of the employment relationship. [¶] The arbitration shall be held before a single arbitrator, who shall issue a written decision detailing his findings and award within thirty (30) days after the close of the arbitration hearing. [Defendant] will bear the cost of the arbitration proceeding."

"LL. <u>AMENDMENTS, REVISIONS AND MODIFICATIONS</u>

"This Employee Handbook may be amended, revised and/or modified by [defendant] at any time without notice. If you have any questions about this, please contact the Human Resources Department."

Page i of the Handbook provided as follows: "This handbook is provided for the use of the Employees as a general summary of the agency's personnel policies, work rules and benefits. The handbook is designed to acquaint you with the information as quickly as possible by highlighting agency policies, practices and benefits for your personal education. The handbook cannot anticipate every situation or answer every question. Therefore, you will find variations in working conditions and benefits, depending upon the division, category and Employee unit to which you belong. Your more detailed questions should be referred to your supervisor and/or the Human Resources Department. This Handbook is not intended to create a contract of employment and does not in any way alter the at-will employment relationship between [defendant] and its Employees."

The document signed by plaintiff is entitled "Acknowledgment of Receipt of Employee Handbook." The acknowledgement states that the Handbook "contains important information about [defendant's] general personnel policies and on [his] privileges and obligations as an Employee." It provides, "I understand that I am governed by the contents of the Handbook and that [defendant] may change, rescind or add to any policies, benefits or practices described in the Handbook from time to time in its sole and absolute discretion, with or without prior notice."

Plaintiff in his declaration opposing the petition to compel arbitration stated that he was not made aware of the arbitration clause by defendant and was not aware of it. He also stated that during his employment he received a new handbook, of which he never acknowledged receipt in writing, and an accompanying letter from defendant's human resources director. That letter stated, "Here is your Master Copy of the 2009 Employee Handbook. This copy is to be placed in a location where all key Employee reference information is maintained. New employees will receive personal copies as

part of the hiring process. All [of defendant's] Employees will sign the receipt for their personal copy. [¶] If you have questions or wish to recommend changes, please refer to the changes in terms of how the manual is organized." The letter further provides: "Please do not mark your corrections or recommendations on the 2009 Employee Handbook Master Copy to send it to [Human Resources] for modification. When our request for changing a section in the 2009 Employee Handbook is approved; the page(s) will be revised and forwarded to each cost center for an addition to the handbook. Once the newly revised page is received in the cost center, remove the current page and replace it with the revised page."

In this new handbook, there is an arbitration provision virtually identical to the one in the 2006 Handbook, except it adds the following significant language: "Employees will be required to sign for receipt of the handbook acknowledging inclusion of the arbitration policy stated in the handbook. Also, Employees will be required to sign a full arbitration agreement that is signed by both the Employee and the Human Resources Director or designee."

### B. Ruling on Petition

At the hearing on the petition to compel arbitration, the trial court heard argument and concluded there was no agreement to arbitrate, explaining that the mere acknowledgement of receipt of the Handbook was insufficient to create an enforceable arbitration agreement. The trial court therefore denied the petition.

### DISCUSSION

### A. Arbitration Principles and Standard of Review

■ A written agreement to arbitrate is enforceable. (Code Civ. Proc., § 1281;[1] 9 U.S.C. § 2.) If, upon a petition to compel arbitration, the court determines that a written agreement to arbitrate the controversy exists, the court shall order the arbitration of the controversy. (§ 1281.2.) "Under both federal and state law, the threshold question presented by a petition to compel arbitration is whether there is an agreement to arbitrate. The United States Supreme Court has stated that '. . . the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute.' (*Mitsubishi Motors v. Soler Chrysler-Plymouth* (1985) 473 U.S. 614, 626 [87 L.Ed.2d 444, 454, 105 S.Ct. 3346].) Similarly, under California law, ' "[a]rbitration is recognized as a matter of contract, and a party cannot

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise stated.

be forced to arbitrate something in the absence of an agreement to do so." ' [Citations.]" (*Cheng-Canindin v. Renaissance Hotel Associates* (1996) 50 Cal.App.4th 676, 683 [57 Cal.Rptr.2d 867].)

■ As one court has said, "Under both federal and .state law, . . . arbitration cannot be compelled absent an arbitration agreement. 'As the United States Supreme Court has stated, "The 'liberal federal policy favoring arbitration agreements,' [citation] . . . is at bottom a policy guaranteeing the enforcement of private contractual arrangements." [Citations.] Similarly, the California Supreme Court has stated [the] " '. . . policy favoring arbitration cannot displace the necessity for a voluntary *agreement* to arbitrate.' " [Citation.] "Although '[t]he law favors contracts for arbitration of disputes between parties' [citation], ' "there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate . . . ." ' [Citations.]" ' [Citation.] 'Absent a clear agreement to submit disputes to arbitration, courts will not infer that the right to a jury trial has been waived.' [Citation.]" (*Adajar v. RWR Homes, Inc.* (2008) 160 Cal.App.4th 563, 569 [73 Cal.Rptr.3d 17].)

■ Because arbitration is a contractual matter, a party that has not agreed to arbitrate a controversy cannot be compelled to do so. (*Crowley Maritime Corp. v. Boston Old Colony Ins. Co.* (2008) 158 Cal.App.4th 1061, 1069 [70 Cal.Rptr.3d 605]; *Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 347 [136 Cal.Rptr.3d 832].) A party seeking to compel arbitration has the burden of proving the existence of a valid agreement to arbitrate. (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972 [64 Cal.Rptr.2d 843, 938 P.2d 903]; *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413–414 [58 Cal.Rptr.2d 875, 926 P.2d 1061].) Once that burden is satisfied, the party opposing arbitration must prove by a preponderance of the evidence any defense to the petition. (*Engalla v. Permanente Medical Group, Inc., supra,* 15 Cal.4th at p. 972; *Rosenthal v. Great Western Fin. Securities Corp., supra,* 14 Cal.4th at p. 413.)

■ The arbitration clause in question provides for the application of the Federal Arbitration Act (9 U.S.C. § 1 et seq.). Although that act preempts state law rules that stand as obstacles to the accomplishment of the act's objective, e.g., rules that require classwide arbitration (*AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. ___, ___ [179 L.Ed.2d 742, 131 S.Ct. 1740, 1748] (*Concepcion*)), the issue of whether the parties agreed to arbitration is ordinarily decided under state law. (*First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 944 [131 L.Ed.2d 985, 115 S.Ct. 1920]; see *Cheng-Canindin v. Renaissance Hotel Associates, supra,* 50 Cal.App.4th at p. 683 ["The question of whether the parties agreed to arbitrate is answered

by applying state contract law even when it is alleged that the agreement is covered by the [Federal Arbitration Act]. [Citations.]"].) Moreover, the United States Supreme Court in *Concepcion* did not eliminate state law unconscionability as a defense to the enforcement of arbitration agreements subject to the Federal Arbitration Act. (*Concepcion, supra,* 563 U.S. at p. ___ [131 S.Ct. at p. 1746]; *Samaniego v. Empire Today, LLC* (2012) 205 Cal.App.4th 1138, 1150 [140 Cal.Rptr.3d 492]; *Kanbar v. O'Melveny & Myers* (N.D.Cal. 2011) 849 F.Supp.2d 902, 909; see *Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. ___, ___ [177 L.Ed.2d 403, 130 S.Ct. 2772, 2779] [arbitrator could decide unconscionability issue].)

"Where the existence of a contract is at issue and the evidence is conflicting or admits of more than one inference, it is for the trier of fact to determine whether the contract actually existed. But if the material facts are certain or undisputed, the existence of a contract is a question for the court to decide. [Citation.]" (*Bustamante v. Intuit, Inc.* (2006) 141 Cal.App.4th 199, 208 [45 Cal.Rptr.3d 692].) Here, the facts concerning the enforceability of the Handbook are not in dispute. Any dispute about whether plaintiff was or should have been aware of the clause is not, in this case, dispositive on the issue of the enforceability of the arbitration clause. Thus, as the issue here is a legal one, we decide the matter de novo. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799 [35 Cal.Rptr.2d 418, 883 P.2d 960].)

### B. *Failure to File a Response**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### C. *Handbook's Arbitration Clause Not Enforceable*

The Handbook, which was "distributed" to all employees, included in one of many clauses an arbitration clause not prominently distinguished from the other clauses. The arbitration provision is not specifically highlighted, and there is no place for the employee to acknowledge it in writing. Interestingly, defendant corrected this deficiency in the later handbook, which plaintiff did not acknowledge in writing receiving, by providing that an employee had to sign an arbitration provision.

A relevant case in California is *Mitri v. Arnel Management Co.* (2007) 157 Cal.App.4th 1164 [69 Cal.Rptr.3d 223] (*Mitri*), which, as here, involved an employee handbook stating that " '[a]ny dispute arising out of employment with the Company, as allowed by law, will be settled by binding arbitration.' " (*Id.* at p. 1167.) The court held that the employer did not establish the

---

*See footnote, *ante,* page 1511.

employee's consent to binding arbitration of claims arising out of the employment relationship because the handbook also stated that " '[a]s a condition of employment, all employees are required to sign an arbitration agreement,' " and further stated that " '[e]mployees will be provided a copy of their signed arbitration agreement.' " (*Id.* at pp. 1167, 1168.) According to the court in *Mitri*, these two provisions indicated an intent to have employees sign a separate arbitration agreement, which the employee in that case did not sign. (*Id.* at pp. 1170–1171.) The court said that the acknowledgment of receipt form signed by employees did not constitute evidence of an employee's acquiescence to the arbitration agreement provision in the employee handbook because the acknowledgment form relegated the employee handbook's status to " 'an excellent resource for employees with questions about the Company.' " (*Id.* at p. 1173.) The court further stated that the employee handbook was " 'designed to acquaint new employees . . . with Human Resource policies, operational issues, employee services, and benefits that reflect the desire to provide a professional work environment.' " (*Ibid.*) The court noted that the acknowledgment of receipt form made no reference to an agreement by the employee to abide by the handbook's arbitration provision. (*Ibid.*) Although *Mitri* is distinguishable from the instant case, its observations as to the purpose of an employee handbook and the significance of the acknowledgment form are applicable to the Handbook and acknowledgment form here. (See *Romo v. Y-3 Holdings, Inc.* (2001) 87 Cal.App.4th 1153, 1159–1160 [105 Cal.Rptr.2d 208]; *Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 804–805 [137 Cal.Rptr.3d 773].)

The language in the Handbook here, as the language at issue in *Mitri, supra,* 157 Cal.App.4th 1164, suggests that the Handbook, which was "distributed" to all employees, was informational rather than contractual. Thus, because defendant failed to point out or call attention to the arbitration requirement in the acknowledgment, plaintiff should not be bound to arbitrate.

Cases in other jurisdictions support this conclusion. For example, in *Nelson v. Cyprus Bagdad Copper Corp.* (9th Cir. 1997) 119 F.3d 756 (*Nelson*), the Ninth Circuit held that the arbitration provisions in an employee handbook did not constitute a waiver of the plaintiff's right to have his claims under the Americans with Disabilities Act of 1990 (ADA), 42 United States Code sections 12101 to 12213, and the Arizona Civil Rights Act, Arizona Revised Statutes section 41-1463, determined in court. The court said, "The undisputed facts in the record before us demonstrate that [the employee] did not enter into a 'knowing agreement' to arbitrate his claims under the ADA. First, we conclude that the acknowledgment form signed by [the employee] does not suffice as a valid waiver under [*Prudential Ins. Co. of America v.*] *Lai* [(9th Cir. 1994) 42 F.3d 1299]. When [the employee] was given a copy of the revised employee Handbook, he signed an acknowledgment of receipt.

Nothing in that acknowledgment notified [the employee] either that the Handbook contained an arbitration clause or that his acceptance of the Handbook constituted a waiver of his right to a judicial forum in which to resolve claims covered by the ADA. Under the express terms of the acknowledgment, [the employee] agreed only to 'read and understand' the Handbook. He did *not* agree to be bound by its provisions. Certainly, nothing in the acknowledgment form notified him that by agreeing to 'read and understand,' he was additionally agreeing to waive any rights or remedies afforded him by civil rights statutes that might be inconsistent with the terms set out in the Handbook. Indeed, the acknowledgment form itself suggests quite the opposite by characterizing the Handbook as a 'guideline' to the company's unilaterally promulgated policies and procedures. Merely signing the form did not in any way constitute a 'knowing agreement to arbitrate,' and thereby to surrender his statutory right to a judicial forum." (*Nelson, supra*, 119 F.3d at p. 761, fn. omitted.) Here, merely agreeing to be "governed by the contents" of the Handbook that contains "important information" about defendant's "general personnel policies and on [plaintiff's] privileges and obligations"—all of which could unilaterally be changed—does not constitute a contract and does not bind plaintiff to arbitration.

Following *Nelson, supra*, 119 F.3d 756, the Ninth Circuit in *Kummetz v. Tech Mold, Inc.* (9th Cir. 1998) 152 F.3d 1153 held that an arbitration clause in an employee handbook did not compel a former employee to arbitrate rather than litigate his claims in court. The court stressed that, as here, the acknowledgment form signed by the employee did not refer to the arbitration provision in the handbook. (*Id.* at p. 1155.)

Similarly, the Supreme Court of Hawaii held that the requirement for a binding arbitration agreement—an employee's unambiguous intent to submit to arbitration—"ha[d] not been satisfied" by an acknowledgment of receipt of an employer's handbook containing an arbitration clause. (*Douglass v. Pflueger Hawaii, Inc.* (2006) 110 Haw. 520 [135 P.3d 129, 143].) In that case, the court stressed that the acknowledgment contained no reference to the arbitration clause. Moreover, also as here, the court emphasized as follows: "[T]he arbitration provision at issue here is *not* 'boxed off' or otherwise set apart from the other provisions in the Handbook or on the acknowledgment form. In fact, the arbitration provision, like all the other provisions in the Employee Handbook, is (1) introduced by its own bold faced heading and (2) in the same font size as the rest of the Handbook. Moreover, the agreement, unlike the agreement in *Brown* [*v. KFC National Management Co.* (1996) 82 Haw. 226 [921 P.2d 146]] that was set off and on the same page as the signature line, is located on page 20 of the sixty-page Handbook, and [the employee's] signature is not found until forty pages later on the acknowledgment page, which, as previously pointed out, makes no mention of the arbitration provision. [¶] 'Only if [the employer] had specifically called [the

employee's] attention to the arbitration clause in the [Handbook] would the clause suffice in the face of the uninformative Acknowledgement [sic].' *Kummetz*, 152 F.3d at 1156. The record before us, however, does not indicate that [the employee] was informed of the existence of the arbitration provision, let alone that he would be bound by it." (*Id.*, 135 P.3d at p. 142; see 1 Domke on Commercial Arbitration (3d ed. 2012) § 16:11.) Here, as in *Douglass v. Pflueger Hawaii, Inc., supra*, 135 P.3d 129, the acknowledgment form did not reference the arbitration clause, much less advise plaintiff that he would be bound by it.

■ No authorities have been cited to us that support defendant's position. On the contrary, whatever authorities there are support plaintiff's position. (See, e.g., *Hubner v. Cutthroat Communications, Inc.* (2003) 318 Mont. 421 [80 P.3d 1256, 1260]; *Snow v. BE&K Construction Co.* (D.Me. 2001) 126 F.Supp.2d 5, 11–15; *Ex Parte Beasley* (Ala. 1998) 712 So.2d 338, 340, 341.) To support a conclusion that an employee has relinquished his or her right to assert an employment-related claim in court, there must be more than a boilerplate arbitration clause buried in a lengthy employee handbook given to new employees. At a minimum, there should be a specific reference to the duty to arbitrate employment-related disputes in the acknowledgment of receipt form signed by the employee at commencement of employment. The increasing phenomenon of depriving employees of the right to a judicial forum should not be enlarged by imposing upon employees an obligation to arbitrate based on one obscure clause in a large employee handbook distributed to new employees for informational purposes.

■ Plaintiff signed a form acknowledging receipt of the Handbook, which Handbook contained "important information about [defendant's] general personnel policies" and included an "understand[ing]" he would be "governed" by its contents. That should not, under the circumstances, qualify as an agreement to be bound by the arbitration clause. At best, it expressed the employee's understanding that he must comply with personnel policies and obligations, rather than an agreement to arbitrate.

■ Moreover, the Handbook expressly provides: "This Handbook is not intended to create a contract of employment . . . ." One authority has noted, "Efforts by an employer to have it both ways by claiming that a handbook is not a contract [(as here)] but that an employee acknowledging receipt of a handbook has contracted to arbitrate any disputes with his or her employer can backfire." (1 Domke on Commercial Arbitration, *supra*, § 16:11, p. 16-67.) Courts have determined that such a provision renders the matter ambiguous, and that the ambiguity is to be construed against the employer that drafted the document. (See, e.g., *Hubner v. Cutthroat Communications, Inc., supra*,

80 P.3d at p. 1261.) Also suggesting the noncontractual aspect of the Handbook is defendant's acknowledgment that it "distributed" the Handbook to all of the employees.

■ The arbitration clause is unenforceable for other reasons. An agreement to arbitrate is illusory if, as here, the employer can unilaterally modify the handbook. (See *Salazar v. Citadel Communications Corp.* (2004) 135 N.M. 447 [90 P.3d 466, 469]; *Phox v. Atriums Management Co.* (D.Kan. 2002) 230 F.Supp.2d 1279, 1282.) In addition, recent California authority renders the arbitration clause in issue unenforceable for another reason. ■ In *Trivedi v. Curexo Technology Corp.* (2010) 189 Cal.App.4th 387, 393 [116 Cal.Rptr.3d 804] (*Trivedi*), the court said, "Numerous cases have held that the failure to provide a copy of the arbitration rules to which the employee would be bound supported a finding of procedural unconscionability. [Citations.]" Here there is no evidence that the American Arbitration Association rules specified in the arbitration clause were provided to plaintiff.

Moreover, there also is no evidence that the arbitration clause, which was buried in a handbook that was "distributed" to all employees, was subject to negotiation. "The Supreme Court has acknowledged that adhesion contracts in the employment context typically contain some measure of procedural unconscionability. (See, e.g., *Armendariz* [*v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83,] 115 [99 Cal.Rptr.2d 745, 6 P.3d 669] ['in the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement']; accord, *Little* [*v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064,] 1071 [130 Cal.Rptr.2d 892, 63 P.3d 979].)" (*Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, 1470 [92 Cal.Rptr.3d 153].) Thus, the arbitration clause is procedurally unconscionable. The arbitration clause is also substantively unconscionable in that it requires the employee to relinquish his or her relevant administrative and judicial rights under federal and state statutes (cf. *Ajamian v. CantorCO2e, L.P., supra*, 203 Cal.App.4th at pp. 798–799) and it makes no express provision for discovery rights (*Armendariz v. Foundation Health Psychcare Services, Inc., supra*, 24 Cal.4th at p. 104). As the American Arbitration Association rules specified by the clause were not provided to plaintiff, and according to defendant those rules gave the arbitrator the discretion to deny any discovery, the provision for discovery is insufficient. Accordingly, the clause, as both procedurally and substantively unconscionable, is unenforceable. (*Trivedi, supra*, 189 Cal.App.4th 387.) For all of the foregoing reasons, the trial court correctly denied the petition to compel arbitration.

## DISPOSITION

The trial court's order is affirmed. Plaintiff is entitled to costs on appeal.

Armstrong, J., concurred.

**TURNER, P. J.,** Concurring and Dissenting.—I respectfully dissent from the determination to affirm the order denying the petition to compel arbitration.

First, California contract law provides when an employee signs an acknowledgment of receipt of an employee handbook, she or he is bound by its contents including an agreement to arbitrate. (*24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1215 [78 Cal.Rptr.2d 533] [acknowledgement referred to arbitration provision in employee handbook]; *Boys Club of San Fernando Valley, Inc. v. Fidelity & Deposit Co.* (1992) 6 Cal.App.4th 1266, 1271–1272 [8 Cal.Rptr.2d 587] [party bound by incorporation of a contract into a performance bond]; *Ware v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1972) 24 Cal.App.3d 35, 41 [100 Cal.Rptr. 791] [broker's signature on application that referred not to arbitration but to exchange rules which contained an agreement to arbitrate disputes]; *Gear v. Webster* (1968) 258 Cal.App.2d 57, 61 [65 Cal.Rptr. 255] [Realtor who agreed to abide by association bylaws bound by arbitration agreement contained therein]; see *Adajar v. RWR Homes, Inc.* (2008) 160 Cal.App.4th 563, 569 [73 Cal.Rptr.3d 17]; Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2011) ¶ 5:18, p. 5-12 (rev. # 1, 2010).) Here, the undisputed evidence demonstrates plaintiff's written acknowledgement signed by him states he agreed to be bound by the employee handbook. The employee handbook has a clearly stated arbitration provision. It is expressly listed in the 2006 employee handbook table of contents. Entitled "DISPUTE RESOLUTION POLICY," it plainly sets forth both parties' obligation to arbitrate all employment disputes. No doubt, other jurisdictions may have other views of the effect of an express agreement to be bound by the terms of an employment handbook. But those views are inconsistent with this state's law until now.

The fact plaintiff chose not to read the 2006 handbook is not controlling. Plaintiff acknowledged in writing he received the employee handbook, which set forth his obligations as an employee. Plaintiff agreed in writing he was governed by the handbook's contents. He further agreed to read the employee handbook and understand and adhere to its policies. This was sufficient to comply with the written agreement to arbitrate requirement imposed by the federal and California arbitration acts. (9 U.S.C. § 2; Code Civ. Proc., § 1281; *Valero Refining, Inc. v. M/T Lauberhorn* (5th Cir. 1987) 813 F.2d 60, 63–64; *Banner Entertainment, Inc. v. Superior Court* (1998) 62 Cal.App.4th

348, 361 [72 Cal.Rptr.2d 598].) The fact he chose not to read the 2006 employee handbook nor claims to be bound by it does not discharge plaintiff's duty to arbitrate. (*Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 710 [131 Cal.Rptr. 882, 552 P.2d 1178]; *Brookwood v. Bank of America* (1996) 45 Cal.App.4th 1667, 1674 [53 Cal.Rptr.2d 515]; *Rowland v. PaineWebber Inc.* (1992) 4 Cal.App.4th 279, 286 [6 Cal.Rptr.2d 20]; *Chan v. Drexel Burnham Lambert, Inc.* (1986) 178 Cal.App.3d 632, 641 [223 Cal.Rptr. 838].)

Second, I am unpersuaded by plaintiff's argument that the arbitration provisions are somehow hard to find or understand. They look clear to me. And plaintiff was hired to act as defendant's controller. The complaint alleges he gave sophisticated tax and labor law advice to defendant's senior officials and his warnings were rebuffed. The arbitration provisions are apparent, obvious and lucid. The acknowledgement expressly refers to the handbook, which contains the arbitration provisions.

Third, I am unpersuaded by plaintiff's reliance on cases where the arbitration agreement requires it be executed. Three cases involve that scenario. In each of these cases, the employee handbook contained an arbitration provision. Each of the three arbitration provisions required the employees to sign the agreement to arbitrate. And in none of these cases had the employee signed the separate agreements to arbitrate. (*Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 776, 805–806 [137 Cal.Rptr.3d 773]; *Mitri v. Arnel Management Co.* (2007) 157 Cal.App.4th 1164, 1169–1173 [69 Cal.Rptr.3d 223]; *Romo v. Y-3 Holdings, Inc.* (2001) 87 Cal.App.4th 1153, 1159–1160 [105 Cal.Rptr.2d 208].) Here, there was no specified duty in the employee handbook to execute a distinct arbitration agreement. And the trial court expressly relied on *Mitri* and *Romo*; neither of which is controlling.

Fourth, there is no merit to plaintiff's argument the 2006 employee handbook's statement that it does not create a contract of employment permitted the arbitration petition to be denied. The language relied upon by plaintiff, which appears under the heading "TERMINATION OF EMPLOY-MENT," states: "Employment is at will and may be terminated by the Employer or the Employee with or without notice or reason. An Employee terminated without notice for a reason other than dishonesty, insubordination or malfeasance, as determined at the sole discretion of the Employer, will receive two weeks transition pay. Nothing contained in this handbook is intended to create a contract of employment or alter the at-will nature of the employment relationship in any way." This paragraph addresses the issue of an implied contract not to terminate but for good cause. (*Dore v. Arnold*

*Worldwide, Inc.* (2006) 39 Cal.4th 384, 389–393 [46 Cal.Rptr.3d 668, 139 P.3d 56]; *Stillwell v. The Salvation Army* (2008) 167 Cal.App.4th 360, 375–376 [84 Cal.Rptr.3d 111].) This paragraph does not in any way obviate the duty to arbitrate. The duty to arbitrate remains. Further, the employer has the right to alter employment conditions if done reasonably. The underlying contract is not rendered illusory by the exercise of that power. (*Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 619 [101 Cal.Rptr.3d 2, 218 P.3d 262]; *Asmus v. Pacific Bell* (2000) 23 Cal.4th 1, 15–18 [96 Cal.Rptr.2d 179, 999 P.2d 71]; *DiGiacinto v. Ameriko-Omserv Corp.* (1997) 59 Cal.App.4th 629, 634 [69 Cal.Rptr.2d 300]; see *Singh v. Southland Stone, U.S.A., Inc.* (2010) 186 Cal.App.4th 338, 356 [112 Cal.Rptr.3d 455]; *Mitri v. Arnel Management Co., supra,* 157 Cal.App.4th at p. 1171.)

Fifth, plaintiff's argument that all preemployment arbitration agreements are unconscionable and therefore may not be enforced is not a ground for affirming the judgment. Such a rule is preempted by the Federal Arbitration Act. (9 U.S.C. § 2; *Marmet Health Care Center v. Brown* (2012) 565 U.S. ___, ___ [182 L.Ed.2d 42, 132 S.Ct. 1201, 1203]; *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. ___, ___ [179 L.Ed.2d 742, 131 S.Ct. 1740, 1750].)

Sixth, the agreement is not unconscionable because of any problem relating to discovery. Plaintiff argues the American Arbitration Association rules do not permit for the sufficient use of discovery devices. Implied in an employer-employee arbitration agreement is the opportunity to utilize discovery devices in a case which potentially may involve emotional distress damages. (Code Civ. Proc., § 1283.1; *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1076–1081 [130 Cal.Rptr.2d 892, 63 P.3d 979]; *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 105–106 [99 Cal.Rptr.2d 745, 6 P.3d 669].) Here, there is a cause of action for intentional severe emotional distress infliction. Implied within the arbitration agreement is the right to adequate discovery.

Seventh, I agree though with plaintiff as to any of his claims covered by the 2009 handbook. There is no evidence plaintiff was ever advised of the contents of the 2009 handbook, which supplanted the earlier arbitration agreement. There is no signed acknowledgement of the 2009 handbook as was the case earlier. Thus, his claims incurred subsequent to the promulgation of the 2009 handbook are not subject to its arbitration provisions. (*Metters v. Ralphs Grocery Co.* (2008) 161 Cal.App.4th 696, 703–704 [74 Cal.Rptr.3d 210].) As a result, I would reverse the trial court's findings as to all the

pre-2009 agreement claims and direct they be arbitrated; allow the trial court to sever the nonarbitrable claims; and order arbitration on the arbitrable claims even though such may be impractical. (*KPMG LLP v. Cocchi* (2011) 565 U.S. ___, ___–___ [181 L.Ed.2d 323, 132 S.Ct. 23, 25–26].)

A petition for a rehearing was denied August 20, 2012, and the opinion was modified to read as printed above.