Filed 3/15/21  Singh v. Santa Barbara Cottage Hospital CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| ONKAR SINGH,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SANTA BARBARA COTTAGE HOSPITAL,<br><br>    Defendant and Appellant. | 2d Civ. No. B304343<br>(Super. Ct. No. 18CV05946)<br>(Santa Barbara County) |

Defendant appeals an order denying its petition to compel arbitration.  The trial court denied the petition on the ground that plaintiff is suing on a contract different than the contract containing the arbitration agreement.  We affirm.

FACTS

Onkar Singh is a profusionist, a person who uses devices outside the body to keep a patient alive during cardiac surgery.  Originally Singh was an employee of Santa Barbara Cottage Hospital (Cottage).

*Allied and Cottage Contract*

In October 2015, Cottage and Allied Health Resources, Inc. (Allied) entered into a contract requiring Allied to provide all cardiac profusion services at Cottage. The contract provides that all profusionists would be the staff of Allied and not Cottage. The contract also provides that Allied would hire Singh as a profusionist on its staff and he would no longer be an employee of Cottage.

The contract provides that the relationship between Allied and Cottage is nothing other than independent entities, and that neither is the agent, employee, or representative of the other.

*Allied and Singh Contract*

In November 2015, Singh signed a contract with Allied for himself and for his corporation, Mesa Health Services, Inc. The president of Allied, Kevin Saiki, signed on behalf of Allied.

The contract provides that Singh is an independent contractor and will not become an employee, agent, or principal of Allied.

The agreement contains a dispute resolution provision as follows:

(a) *Covenant to Mediate.* The Parties hereby agree and covenant to submit all claims, controversies, differences, demands or causes of action relating to or arising out of this Agreement to mediation to be conducted by a mediator mutually agreed upon by the Parties, prior to commencing an action or arbitration of the dispute. . . .

"(b) *Arbitration.* If the Parties have been unable to resolve any claim, controversy, difference, demand or cause of action relating to or arising out of this Agreement through the mediation as provided by subparagraph (a), either Party may

2.

submit the matter to arbitration. The arbitration shall be administered by the American Arbitration Association in accordance with its commercial arbitration rules. Judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

"(c) *Enforcement of Covenant to Mediate/Arbitrate.* This paragraph, including the provision for mandatory mediation, is deemed an arbitration clause for the purpose of enforcing compliance therewith. Any Party may seek compliance with the provision by petition to any California court of general jurisdiction. The prevailing Party in any proceeding to enforce this paragraph is entitled to the court's order for payment of attorney fees and costs in connection with the proceeding."

*Original Complaint*

In December 2018, Singh filed a complaint alleging labor law violations against Allied and Cottage and breach of contract against Allied and Saiki. The parties, including Cottage, went into mediation.

Singh and Allied were able to settle most of Singh's claims. Singh filed a partial dismissal of his complaint. Singh and Cottage were unable to settle any of Singh's claims.

*First Amended Complaint*

Singh filed a first amended complaint against only Cottage, and not Allied or Saiki, alleging labor law violations, breach of oral contract, fraud, negligent misrepresentation, and wrongful termination. The first amended complaint alleges:

In November 2017, Singh learned that Cottage would be terminating its contact with Allied and hiring three new profusionists who would be Cottage employees. Cottage told Singh that it did not want Saiki being called for emergencies.

Singh agreed to be the on-call profusionist. Saiki told Singh that his on-call arrangement with Cottage would not be compensated by Allied.

On November 22, 2018, Cottage promised to hire Singh for one of three profusionist employee positions at Cottage. Because Singh would need to go through the formal application process, Cottage said that it would take a few months before he could be officially hired.

In January 2018, Cottage hired two profusionists. Cottage asked Singh to allow the new profusionists to shadow him and to train them. The training was not part of Allied's agreement with Cottage, and Saiki informed Singh that he would not be paid for it.

In January or February 2018, Singh voiced concerns to Cottage that the new profusionists were not properly trained and were not ready to perform services without supervision. Cottage told Singh that it expected him to train the new employees so that there would be a smooth transition when Allied's contract with Cottage ended. Saiki informed Cottage that Allied would not pay Singh for training Cottage employee profusionists.

In February 2018, Singh complained to Cottage that he was not being paid for the work he was doing for Cottage.

In March 2018, Saiki met with Singh in the Cottage employee locker room. A Cottage security guard was present. Saiki told Singh to clear out his locker and leave Cottage escorted by the security guard. Saiki was acting at Cottage's direction.

In May 2018, Cottage notified Singh that he would not be hired as a profusionist.

Singh alleges his employment at Cottage was terminated and he was not hired by Cottage as a profusionist in retaliation

4.

for complaining about not being paid and complaining about the competence of the new employee profusionists.

*Petition to Compel Arbitration*

Cottage petitioned to compel arbitration. Cottage brought the petition under the dispute resolution provision of the contract between Allied and Singh, a contract to which Cottage is not a signatory. Cottage argued it could compel arbitration as a nonsignatory because (1) Singh's causes of action against Cottage were covered by the contract between Singh and Allied; (2) Cottage had the right to compel arbitration as an alleged agent of a signatory to the contract; and (3) Cottage can compel arbitration under the doctrine of equitable estoppel.

Singh opposed the petition on the grounds that his claims did not relate to the agreement between Allied and himself; Cottage and Allied were not agents of one another; and that Singh is not equitably estopped.

In support of Singh's opposition, Allied's president Saiki provided an affidavit. Saiki declared that the arbitration provision contained in the contract between Allied and Singh is not intended for the benefit of Cottage; that Cottage is not a party to the contract; and that "[Allied] does not invoke the arbitration provision for [Singh's] claims in this action and disavows the arbitration provision contained in the [contract]."

*Ruling*

The trial court concluded that Singh's claims are not within the contract between Allied and Singh. The court denied Cottage's petition to compel arbitration. Neither party requested a statement of decision.

DISCUSSION

I

*Standard of Review*

The standard of review on the scope of an arbitration agreement in the absence of conflicting extrinsic evidence is de novo. (*Rowe v. Exline* (2007) 153 Cal.App.4th 1276, 1283.) The standard of review on whether and to what extent nonsignatories can enforce an arbitration clause is also de novo. (*Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 708.) The standard of review on questions of fact is substantial evidence. (*Robertson v. Health Net of California, Inc.* (2005) 132 Cal.App.4th 1419, 1425.)

II

*Applicability of the Federal Arbitration Act (FAA)*

Cottage contends that because the parties were engaged in interstate commerce, the FAA applies.

The FAA applies to arbitration agreements in transactions involving interstate commerce. (*Shepard v. Edward Mackay Enterprises, Inc.* (2007) 148 Cal.App.4th 1092, 1097.) It provides that such agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist as law or in equity for the revocation of any contract." (9 U.S.C. § 2.) The FAA preempts conflicting state law. (*Shepard*, at p. 1097.)

Cottage argues that it is engaged in interstate commerce. Assuming that to be so, Cottage makes no effort in its opening brief to show how the FAA is any different from the California Arbitration Act (Code Civ. Proc., § 1280 et seq.) as applied to this case. In fact, Cottage relied on California law, not the FAA, in its briefs. It is not at all clear why Cottage raised the issue.

6.

For the first time in its reply brief, Cottage claims that under the FAA, where an arbitration provision is broadly worded, arbitration is required, not only for all claims relating to the contract, but also for all claims where the underlying factual allegations touch matters covered by the contract containing the arbitration provision. (Citing *Simula, Inc. v. Autoliv, Inc.* (9th Cir. 1999) 175 F.3d 716, 721.) But here Singh's claims arise from a contract entirely separate from the contract containing the arbitration clause. Whether the FAA or California law applies, the result is the same.

III

*Mandatory Arbitration*

Under the California Constitution, a party in a civil action has the right to a jury trial. (Cal. Const., art. I, § 16; *Grafton Partners v. Superior Court* (2005) 36 Cal.4th 944, 951.) Absent a clear agreement to submit disputes to arbitration, courts will not infer that the right to a jury trial has been waived. (*Sparks v. Vista Del Mar Child & Family Services* (2012) 207 Cal.App.4th 1511, 1518.) Neither California nor federal law compels a party to arbitrate absent an agreement to do so. (*Ibid.*)

Subparagraph (b) of the dispute resolution provision in Singh's contract with Allied provides that if the parties are unable to resolve their dispute through mediation, "either party *may* submit the matter to arbitration." (Italics added.) Singh argues, without citation to authority, that the use of the word "may" means that arbitration is entirely voluntary.

But courts have rejected Singh's argument in construing similar arbitration provisions. Those cases have held that "may" means arbitration is not automatic; but where one party opts for arbitration, the other party is bound. (See *Service Employees*

7.

*Internat. Union, Local 18 v. American Building Maintenance Co.* (1972) 29 Cal.App.3d 356, 358 [" 'the issue in dispute may be submitted to an impartial arbitrator' "]; *Pacific Gas & Electric Co. v. Superior Court* (1993) 15 Cal.App.4th 576, 595 [dispute " 'may be submitted *by either party* to arbitration' "].)

The bar to Cottage's petition to compel arbitration is not the use of the word "may" in Singh's contract with Allied. Instead, the bar is that Singh's causes of action alleged in the first amended complaint do not arise from the Allied contract.

IV

*Enforcement by Nonsignatory*

Cottage contends it can enforce the arbitration agreement even though it is not a signatory to the contract.

Cottage concedes that the general rule is one must be a party to an arbitration agreement in order to enforce it. (*Suh v. Superior Court* (2010) 181 Cal.App.4th 1504, 1513.) But courts have recognized a number of exceptions to the rule. (*Ibid.*)

*(a) Equitable Estoppel*

Equitable estoppel is one exception to the rule. "Under this exception, 'a nonsignatory defendant may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of action against the nonsignatory are "intimately founded in and intertwined" with the underlying contract obligations.' [Citation.] The doctrine applies where the claims are ' " 'based on the same facts and are inherently inseparable' " from the arbitrable claims against signatory defendants.' " (*Garcia v. Pexco, LLC* (2017) 11 Cal.App.5th 782, 786.)

Here Singh's first amended complaint alleges an oral contract with Cottage that required duties outside the scope of Singh's written contract with Allied. The allegations are not

8.

"intimately founded in and intertwined with" the obligations under Singh's contract with Allied. Nor are they based on the same facts and are inherently inseparable from the arbitrable claims. The complaint alleges breach of duties that Cottage alone had under an oral contract.

Singh's contract with Allied provides that Singh is an independent contractor. Nothing prevented Singh from having separate contracts with Allied and Cottage during the same time period. That is what Singh is alleging.

Cottage's argument is based on what it sees as the similarities between the allegations of Singh's original complaint against both Cottage and Allied, and the allegations of the first amended complaint against Cottage. Cottage claims that Singh is bound by the allegations of the first amended complaint.

But Singh has the right to amend his complaint at least once as a matter of course. (Code Civ. Proc., § 472, subd. (a).) Generally, when an amended pleading has been filed, the original pleading will be disregarded. (*Vallejo Development Co. v. Beck Development Co.* (1994) 24 Cal.App.4th 929, 946.) The exception to that rule occurs when an amended complaint attempts to avoid defects in a prior complaint by ignoring them. The court will examine the amended pleading to ascertain whether it is a sham. (*Ibid.*) Thus, in *Vallejo*, the exhibits attached to the complaint and the allegations contained in the exhibits under oath showed the amended complaint to be a sham. (*Ibid.*)

Here there is no showing that Singh's first amended complaint is a sham. The original complaint was not verified. Singh has the right to amend his complaint to eliminate a defendant and to clarify that his claims are against the remaining defendant.

Cottage also claims Singh is estopped because he participated in mediation with Cottage.  Cottage points out that mandatory mediation is the first step in the dispute resolution process contained in Allied's contract with Singh.  Cottage cites *Metalclad Corp. v. Ventana Environmental Organizational Partnership* (2003) 109 Cal.App.4th 1705, 1714, for the proposition that a plaintiff is "not entitled to make use of the [contract containing an arbitration clause] as long as it worked to her advantage, then attempt to avoid its application in defining the forum in which her dispute . . . should be resolved."

But here Singh is not trying to make use of a contract containing an arbitration clause.  He is suing under an entirely separate oral agreement containing no such clause.  Even assuming Singh's mediation with Cottage was pursuant to his contract with Allied, Cottage cites no authority that would compel Singh to arbitrate under an entirely separate contract with Cottage.

### (b) Agency

A nonsignatory to an arbitration contract can compel arbitration where the nonsignatory is an agent of the signatory. (*Dryer v. Los Angeles Rams* (1985) 40 Cal.3d 406, 418.)  Cottage bases its claim of agency on the general allegation in the original complaint that the defendants are the agents of each other.

Cottage claims that Singh is bound by the allegations of his original complaint.  But the rule is that a plaintiff has the right to amend his original complaint as long as the amendment is not shown to be a sham.  (*Vallejo Development Co. v. Beck Development Co.*, *supra*, 24 Cal.App.4th at p. 946.)  Here Singh's first amended complaint was not shown to be a sham.  In fact,

10.

Allied's contract with Cottage expressly states that they are not agents of each other.

In any event, such boilerplate allegations of agency are not judicial admissions that bind the plaintiff. (*Barsegian v. Kessler & Kessler* (2013) 215 Cal.App.4th 446, 451.)

### *(c) Third Party Beneficiary*

Cottage argues that it can enforce the arbitration agreement as a third-party beneficiary of Singh's contract with Allied.

The trial court rejected the argument on the ground that Cottage raised it for the first time in its reply papers. Cottage claims it was responding to Saiki's affidavit in opposition to the petition to compel arbitration. Saiki stated that the arbitration provision is not for the benefit of Cottage.

Cottage relies on *Jacobs v. Coldwell Banker Residential Brokerage Co.* (2017) 14 Cal.App.5th 438, 449-450. *Jacobs* held the trial court did not abuse its discretion by allowing the defendant to provide evidence in response to a new theory raised by plaintiffs in their opposition. (*Ibid.*) But here the trial court acted well within its discretion. Cottage did not raise third party beneficiary in its petition. Singh's claim that Cottage is not an intended beneficiary contradicts nothing in the petition. Cottage is claiming it is a third-party beneficiary for the first time in its reply.

In any event, that Cottage may benefit from the contract between Singh and Allied does not automatically make it a third-party beneficiary. To be a third-party beneficiary, the parties to the contract must intend the claimant to be a third-party beneficiary. (*Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516, 524.)

11.

Here Saiki's uncontradicted affidavit shows that Cottage was not intended to be a third-party beneficiary.

Finally, even if Cottage is a third-party beneficiary of Singh's contract with Allied, Singh is suing Cottage on a different contract.

## DISPOSITION

The judgment (order) is affirmed. Costs on appeal are awarded to respondent.

<u>NOT TO BE PUBLISHED.</u>


GILBERT, P. J.

We concur:


YEGAN, J.


TANGEMAN, J.


12.

Colleen K. Stern, Judge

Superior Court County of Santa Barbara

_____

Sheppard, Mullin, Richter & Hampton, Daniel J. McQueen, Melissa M. Smith, David A. Alvarez and Nova K. Stilestein for Defendant and Appellant.

The Myers Law Group, David P. Myers, Ann Hendrix and Morgan J. Good for Plaintiff and Respondent.